IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02195-PAB-MEH

MARSHA ATENCIO,

    Plaintiff,

v.

KING SOOPERS,
ANN PIERCE,
SCOTT BRINSON,
NASH FORACI, and
CHARLES BIGLEN,

    Defendants.
_____

**ORDER**
_____

This matter is before the Court on the Motion for Summary Judgment [Docket No. 17] filed by defendants King Soopers, Ann Pierce, Scott Brinson, Nash Foraci, and Charles Biglen. The motion is fully briefed and ripe for disposition.

**I.  BACKGROUND**

Plaintiff Marsha Atencio was employed by defendant King Soopers between March 24, 1991 and July 7, 2010 as a clerk at the customer service desk of grocery store number 19 in Denver, Colorado. The terms and conditions of plaintiff's employment with King Soopers were governed by a collective bargaining agreement ("CBA") between King Soopers and the United Food and Commercial Workers ("UFCW") Local 7, a union of which plaintiff is a member. *See* Docket No. 17-4.

On July 7, 2010, Charles Biglen, King Soopers' lead investigator, asked Nash Foraci, a King Soopers security investigator, to monitor plaintiff's cash register for the duration of her shift. Docket No. 17-1 at 18-19 (Pierce ICAO Hearing 17:26-18:3); Docket No. 17-2 at 16 (Biglen ICAO Hearing 49:13-14).[1] Mr. Biglen testified that he asked Mr. Foraci to monitor plaintiff's cash register based on his suspicion that plaintiff was stealing money from the register. Docket No. 17-2 at 16 (Biglen ICAO Hearing 49:13-14). Mr. Biglen's belief was formed, in part, on the reported cash register shortages at store number 19 and the fact that plaintiff had previously received eight disciplinary notices and been reprimanded for till shortages or inaccurate cash transactions. Docket No. 17-6.[2]

Mr. Foraci monitored plaintiff's cash register by reviewing security cameras located inside the store. Docket No. 17-1 at 26 (Foraci ICAO Hearing 25:25-27). He testified that, at approximately 9:30 a.m., he saw a customer tender a ten dollar bill to plaintiff as payment. *Id*. at 27 (Foraci ICAO Hearing 26:13-18). After taking the ten dollar bill, plaintiff shuffled the money located in the tray for twenty dollar bills and then provided change from the proper compartments of the cash register. *Id*. Mr. Foraci testified that, during this transaction, plaintiff crumpled bills from the twenties drawer

---

[1] In support of their motion for summary judgment, defendants provided transcripts of testimony presented during an appeal to the Colorado Industrial Claims Appeals Office ("ICAO"). *See* Docket Nos. 17-1, 17-2, 17-3. In her response, plaintiff has not challenged the authenticity or reliability of the aforementioned transcripts. *See* Docket No. 18.

[2] Plaintiff's reprimands notified her that future cash register shortages or inaccurate transactions would lead to disciplinary action. *See, e.g.,* Docket No. 17-5 at 18 (Atencio Dep. 64:1-5, 65:1-6); *id.* at 19 (Atencio Dep. 66:23-67:5).

into the palm of her hand and, after giving the customer change, walked to a different location in the store with her hand clenched in a fist. *Id*. at 30 (Foraci ICAO Hearing 29:13-25). She then placed her hand in her apron and removed her hand with nothing in it. *Id*. Mr. Foraci made a video recording of the security footage and informed Mr. Biglen of the events he had just witnessed. *Id*. at 31 (Foraci ICAO Hearing 30:16-17).

After Mr. Foraci's telephone call, Mr. Biglen went to store number 19. Docket No. 17-2 at 16 (Biglen ICAO Hearing 49:27-29). Mr. Biglen watched the security video and concluded that plaintiff took money from the cash register.[3] Mr. Biglen contacted Anne Pierce, the store manager, and Scott Brinson, the assistant store manager, to inform them of the suspected theft. *Id*. at 17 (Biglen ICAO Hearing 50:27). Mr. Biglen also asked Mr. Brinson to escort plaintiff to the private offices located on the upper level of the store.[4] *Id*. at 27 (Biglen ICAO Hearing 60:14-19); Docket No. 17-5 at 9 (Atencio Dep. 26:25-27:8). Once plaintiff was in the private office, Mr. Brinson asked her to remove the contents of her apron. Docket No. 17-5 at 9 (Atencio Dep. 28:5-12). Plaintiff removed two "crinkled up" twenty dollar bills from her apron, Docket No. 17-2 at 27 (Biglen ICAO Hearing 60:27); *see also* Docket No. 17-8 at 10, and approximately six dollars from her left front pants pockets. Docket No. 17-5 at 10 (Atencio Dep. 32:16-20). Mr. Brinson testified that, after counting the contents of plaintiff's cash register,

---

[3]Specifically, Mr. Biglen said that he saw plaintiff take a ten dollar bill from a customer and then reach into the adjacent pan which contained bills larger than ten dollars to provide change, while keeping her hand clenched until she released the contents of her hand into her apron. Docket No. 17-2 at 18 (Biglen ICAO Hearing 51:9-23).

[4]The office to which Mr. Brinson took plaintiff was not locked during the time plaintiff was there. Docket No. 17-5 at 11 (Atencio Dep. 37:1-5).

they determined that her register was missing approximately fifty dollars. Docket No. 17-3 at 4 (Brinson ICAO Hearing 71:15-18). Based on his training and experience, Mr. Biglen testified that he believed that plaintiff had stolen money from the cash register. Docket No. 17-2 at 34 (Biglen ICAO Hearing 67:16-23). Ms. Pierce, who reviewed the video of plaintiff's transaction, also believed that plaintiff had stolen money from the cash register. Docket No. 17-1 at 19 (Pierce ICAO Hearing 18:16-18). Pursuant to King Soopers' dishonesty policy, Ms. Pierce terminated plaintiff's employment for theft. *Id*. (Pierce ICAO Hearing 18:12-15); Docket No. 17-9 at 10 (King Soopers' Handbook).

While plaintiff was still at the store, defendants notified the Denver Police Department about the incident. Docket No. 17-2 at 32 (Biglen ICAO Hearing 65:3-11). Two police officers arrived at the store. *Id*. After reviewing the security video, the police officers concluded that there was probable cause that a crime had been committed. They handcuffed plaintiff and took her to the police station. Docket No. 17-10 (police report); Docket No. 17-5 at 11 (Atencio Dep. 37:14-20). Plaintiff was charged with theft. Although the matter went to trial, the charges against her were dismissed before the jury deliberated. *Id*. at 16 (Atencio Dep. 56:4-7).

On July 9, 2010, plaintiff initiated a grievance regarding her termination pursuant to the CBA. *See* Docket No. 17-12. Plaintiff's grievance alleged that she did not take money from the cash register and therefore that King Soopers improperly terminated her. Docket No. 17-5 at 13 (Atencio Dep. 43:17-25). Pursuant to Article 40 of the CBA, "no employee who falls within the bargaining unit shall be discharged without good and sufficient cause." Docket No.17-4 at 7. Under Article 43 of the CBA, any disputes or grievances related to an employee's terms of employment must be resolved through the

CBA's three-step grievance process. *Id*. at 9. Step 1 of the grievance process involves an informal conference between the union representative, the aggrieved employee, and the manager of the store. *Id*. If the grievance is not resolved by the informal conference, Step 2 requires the aggrieved employee to file a written notice within twenty days of the date of the event giving rise to the grievance. *Id*. Ten days after the employer receives a written notice of the grievance, the employer's designee and a union representative must meet in an attempt to resolve the grievance. *Id*. Step 3 states, in pertinent part, that "[i]f the grievance is not satisfactorily adjusted in Step 2, either party may, with reasonable promptness, but in no event later than thirty (30) days from the date of the Step 2 meeting, in writing, request arbitration and the other party shall be obligated to proceed with arbitration." *Id*. The CBA provides that "[a] finding or award of the arbitrator shall be final and conclusive upon the parties hereto." *Id*. at 10. King Soopers denied plaintiff's grievance at both Step 1 and Step 2. Docket No. 17-12 at 2-6. As a result, plaintiff requested resolution of her grievance through arbitration at Step 3, which was scheduled for November 12, 2012. *See* Docket No. 18 at 4.

Meanwhile, on June 29, 2011, plaintiff filed a complaint against defendants in the District Court for the City and County of Denver, Colorado. Docket No. 2. In her complaint, plaintiff brought four claims against defendants: (1) wrongful discharge; (2) false arrest; (3) malicious prosecution; and (4) extreme and outrageous conduct. *Id*. at 5-6. Defendants were served with plaintiff's complaint on August 2, 2011 and removed the case to this Court on August 22, 2011, asserting federal question jurisdiction

pursuant to 28 U.S.C. § 1331 on the theory that plaintiff's state law claims "arise" under federal law. Docket No. 1 at 3.

On April 30, 2012, defendants filed this motion for summary judgment. Docket No. 17. Defendants argue that none of plaintiff's state law claims are independent of the CBA governing the dispute and, therefore, they are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq*. In response, plaintiff argues that her state law claims are independent of the CBA and, thus, are not subject to § 301 preemption. Docket No. 18 at 2-3.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Bd. of Regents of the Univ. of N. M.*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).

Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a

court must view the evidence in the light most favorable to the non-moving party. *Id*.; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010). However, "the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).

Plaintiff's response to defendants' motion for summary judgment does not comply with Rule 56 of the Federal Rules of Civil Procedure and this Court's Practice Standards. See Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations"); Judge Philip A. Brimmer § III.F.3.b.iv. The Court, however, may not grant a motion for summary judgment simply because the nonmovant has failed to appropriately respond. *See Galvin v. McCarthy*, No. 07-cv-00885-PAB-BNB, 2009 WL 890717, at *2 (D. Colo. March 31, 2009) (citing *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002)). The Court must apply the usual Rule 56 analysis and consider whether the moving party has met its burden. *Id*. (citing *Reed*, 312 F.3d at 1194); *see also* Fed. R. Civ. P. 56(e)(3) (providing that if the opposing party does not respond, summary judgment should be entered if "the movant is entitled to it"). The Court must "accept as true all material facts asserted and properly supported in [defendants'] summary judgment motion" and grant summary judgment if, based on

those facts, the moving party is entitled to judgment as a matter of law. *Reed*, 312 F.3d at 1195.

## III. ANALYSIS

### A. Section 301 of the LMRA

Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 of the LMRA preempts state law claims if the claims are based on the rights or duties created by a collective bargaining agreement or if evaluation of such claims requires interpretation or application of a collective bargaining agreement. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987); *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 529 (10th Cir. 1992). In enacting § 301, Congress authorized federal courts "to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). In *Allis-Chalmers*, the Supreme Court held that "when [the] resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim . . ., or dismissed as pre-empted by federal labor-contract law." 471 U.S. at 220 (citation omitted). The Court made it clear, however, that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the

federal labor law." *Id*. at 211. Section 301 preempts a state law claim only when an "evaluation of the tort claim is inextricably intertwined with consideration of the terms of [a] labor contract." *Id*. at 213.

In *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988), the Supreme Court elaborated on the *Allis-Chalmers* test. *Id*. at 401. *Lingle* presented the question of "whether an employee covered by a collective-bargaining agreement that provides her with a contractual remedy for discharge without just cause may enforce her state-law remedy for retaliatory discharge." *Id*. The Court held that the plaintiff's retaliatory discharge claim was not preempted by § 301 because it involved factual questions about whether the plaintiff was discharged and whether the employer's motivation was to interfere with the employee's exercise of worker's compensation rights. *Id*. at 407. The Court concluded that proving the tort of retaliatory discharge did not require an examination of the collective bargaining agreement. *Id*. at 409. Additionally, the Court emphasized that "the state-law remedy [was] 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 preemption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." *Id*. at 407. In other words, "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id*. at 409-410.

With these principles in mind, the Court will examine each of plaintiff's state law claims to determine whether their resolution is "inextricably intertwined" with existing provisions of the CBA and, as a result, preempted by § 301 of the LMRA. *Allis-Chalmers*, 471 U.S. at 213.

### B. Wrongful Discharge

Defendants argue that plaintiff's wrongful discharge claim relies entirely on the terms of the CBA given that, for plaintiff to prove that she was terminated without just cause, the Court or fact-finder must interpret the CBA. Docket No. 17 at 7-8. The Court agrees.

Plaintiff's claim for wrongful discharge is based on her allegation that she "was discharged by the defendant after being falsely accused of theft." Docket No. 2 at 6, ¶ 8. Plaintiff alleges that the CBA "provided that [she] would not be discharged without good or just cause," *id*. at ¶ 7, and that, until she was discharged, she "performed her part of the contract." *Id*. at ¶ 9. Plaintiff's claim, therefore, asserts that King Soopers improperly terminated her employment in violation of the CBA.

Because a determination of whether defendants had just cause necessarily requires construction of the CBA, plaintiff's claim is not "independent" of the contract and is, in fact, "inextricably intertwined" with Article 40 of the CBA. *See Garley v. Sandia Corp.*, 236 F.3d 1200, 1210 (10th Cir. 2001) ("To the extent that [a] claim is based on an alleged breach of the CBA, the claim is clearly preempted"). Therefore, plaintiff's claim for wrongful discharge is preempted by § 301 of the LMRA. *Id*.

In *Allis-Chalmers*, the Supreme Court held that, when § 301 preempts a state law claim, a court must either dismiss the claim or treat the state law claim as one for breach of the CBA brought pursuant to § 301.  471 U.S. at 220-21.  Under § 301, an employee can sue in district court for violations of a collective bargaining agreement or to enforce a binding arbitrator's award secured under a collective bargaining agreement.  *United Food & Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 944-45 (10th Cir. 1989).  "[A]n employee can only sue [under § 301 of the LMRA] if he or she has exhausted any exclusive grievance procedures provided in the collective bargaining agreement."  *Garvin v. Am. Tel. & Tel. Co.*, 174 F.3d 1087, 1093 (10th Cir. 1999).  However, exhaustion is excused when (1) it would be futile; (2) the employer through its conduct has repudiated the grievance procedure itself; or (3) the union has prevented the employee from utilizing the grievance process by breaching its duty of fair representation.  *Id*.  The Tenth Circuit noted that the fundamental purpose of exhaustion is to require employees to pursue their grievances through a bargained for grievance procedure that is part of the collective bargaining agreement.  *United Food & Commercial Workers*, 889 F.2d at 945.

Defendants claim that plaintiff failed to exhaust her administrative remedies because she filed her complaint before having participated in the scheduled arbitration. Docket No. 17 at 15.  Plaintiff does not respond directly to this claim, but does argue that the "arbitration process is not designed nor will it deal with plaintiff's claims of false arrest, false imprisonment, malicious prosecution and extreme and outrageous conduct."  Docket No. 18 at 3.  Although plaintiff states that her claim for wrongful

11

discharge was "set for [an arbitration] hearing on November 12, 2012," *id.* at 4, neither party has indicated whether this arbitration took place and, if so, its outcome. However, because plaintiff is required to complete the grievance procedures before filing suit, the Court will dismiss plaintiff's claim for failure to fully exhaust her grievance procedures under the CBA.[5] *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-64 (1983) (finding that, before an employee may bring suit against his employer for breach of collective bargaining agreement, employee is required to attempt to exhaust any grievance or arbitration remedies provided in collective bargaining agreement); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965) (finding that, as a general rule, "employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress"); *Varra v. Dillon Companies, Inc.*, 615 F.2d 1315, 1317 (10th Cir. 1980); *Allis-Chalmers*, 471 U.S. at 220 ("[a] rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness").

### C. False Arrest

Defendants argue that plaintiff's claim for false arrest is preempted by § 301 of the LMRA. Docket No. 17 at 8. Defendants contend that any claim for false arrest

---

[5]Plaintiff's claims against individually named defendants also require an interpretation of the CBA and therefore also are preempted by § 301. *Cumpston v. Dyncorp Tech. Servs., Inc.*, 76 F. App'x 861, 862-63 (10th Cir. 2003); *see also Foy v. Giant Food Inc.*, 298 F.3d 284, 287, 289 n. 4 (4th Cir. 2002) (holding question of whether § 301 preempted a state-law tort claim asserted against a co-worker turned, not on whether he was a signatory to the CBA, but on whether resolution of the claim required interpretation of the CBA); *Int'l Union, United Mine Workers v. Covenant Coal Corp.*, 977 F.2d 895, 895-966 (4th Cir. 1992) (holding § 301 preempted state-law claim against non-signatory employer for tortious interference with a CBA).

necessarily relies on a construction of the "Rights of Management" provision of the CBA. Docket No. 19 at 10. In response, plaintiff asserts that her state law claim for false arrest is not preempted by § 301 because the "CBA does not have provisions dealing with employee theft." Docket No. 18 at 3.

Under Colorado law, to establish a false arrest claim, a plaintiff must prove the following elements: (1) the defendants intended to restrict plaintiff's freedom of movement; (2) plaintiff's freedom of movement was restricted for a period of time, however short, by an act of defendants; and (3) plaintiff was aware that her freedom of movement was restricted. *Goodboe v. Gabriella*, 663 P.2d 1051, 1055-56 (Colo. App. 1983) (citing CJI Civ. 21:1 (2d ed. 1980)). A claim for false arrest fails if the defendant had probable cause to believe that the plaintiff committed a criminal offense. *Rose v. City & Cnty. of Denver*, 990 P.2d 1120, 1123 (Colo. App. 1999).

Defendants rely on *Shiflett v. ITO Corp. of Baltimore*, 202 F.3d 260, 2000 WL 14214 (4th Cir. Jan. 10, 2000), in arguing that a resolution of plaintiff's false arrest claim requires an interpretation of the CBA. However, *Shiflett* found that the plaintiff's claims for false arrest were preempted by § 301 because the CBA in that case had "several provisions . . . deal[ing] squarely with allegations of employee theft." *See id*. at *5. *Shiflett* also found that the CBA "explicitly" granted the defendant a certain level of authority and discretion to deal with theft by an employee. *Id*. Here, however, defendants have not identified a provision of the CBA that is explicitly tailored to a situation regarding employee theft.

13

The Court finds that resolution of plaintiff's false arrest claim does not require an interpretation of the CBA. Each of the aforementioned elements only requires an analysis of factual questions regarding plaintiff's and defendants' conduct and does not necessitate an interpretation of the terms of the CBA. The question is not whether defendants, under the circumstances, could detain plaintiff pursuant to the CBA, but whether they had probable cause to believe that plaintiff had committed a criminal offense. *See Rose*, 990 P.2d at 1123; *Trimble v. Park Cnty. Bd. of Comm'rs*, 242 F.3d 390, 2000 WL 1773239, at *3 (10th Cir. Dec. 4, 2000). The CBA does not define probable cause; rather, probable cause is defined by state law. The Colorado Supreme Court has held that probable cause "requires evidence sufficient to induce a person of ordinary prudence and caution conscientiously to entertain a reasonable belief that defendant may have committed the crimes charged." *See People v. Treat*, 568 P.2d 473, 474-75 (1977); *accord People v. Ayala*, 770 P.2d 1265, 1267 (Colo. 1989); *Estate of Daramola v. Coastal Mart, Inc.*, 170 F. App'x 536, 548 (10th Cir. 2006). Accordingly, because state law provides an independent basis for resolving plaintiff's false arrest claim, a determination of whether defendants had probable cause to restrict plaintiff's freedom is not "inextricably intertwined" with the CBA and therefore plaintiff's false arrest claim is not preempted by § 301. *Lingle*, 486 U.S. at 410.[6]

---

[6]As will be discussed in Section F *infra*, because the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims, the Court will not address defendants' state law arguments regarding this claim.

### D.  Malicious Prosecution

Defendants argue that resolution of plaintiff's malicious prosecution claim is preempted by § 301 of the LMRA because it necessarily requires an interpretation of the "Rights of Management" provision of the CBA to determine whether defendants' actions exceeded the bounds, scope, and reasonableness of their authority.  Docket No. 17 at 9; Docket No. 19 at 10.

In a malicious prosecution action under Colorado law, the burden is on plaintiff to prove (1) that defendants were parties to or assisted in a prior action against plaintiff; (2) that the prior action ended in favor of plaintiff; (3) that there was no probable cause for the prior action; (4) that defendants' participation in the prior action was motivated by malice; and (5) that, as a result of the prior action, plaintiff incurred damages. *Sancetta v. Apollo Stereo Music Co., Inc.*, 616 P.2d 182, 183 (Colo. App. 1980); *accord Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007).  In addition, when a malicious prosecution claim is based on criminal charges, "the criminal prosecution must be disposed of in a way which indicates the innocence of the accused."  *Allen v. City of Aurora*, 892 P.2d 333, 335 (Colo. App. 1994).

Under Colorado law, for purposes of malicious prosecution claims, "[m]alice is any motive other than a desire to bring an offender to justice" and "may be inferred from the want of probable cause."  *Montgomery Ward & Co. v. Pherson*, 272 P.2d 643, 646 (Colo. 1954); *see also Barton v. City & Cnty. of Denver*, 432 F. Supp. 2d 1178, 1208 (D. Colo. 2006).  Thus, a determination of whether defendants' actions towards plaintiff were done with malice does not require a determination of the scope of defendants'

rights under the CBA; instead, it requires an inquiry about defendants' "motive" in pursuing the alleged theft claim against plaintiff.  *See Lingle*, 486 U.S. at 407 (finding that because the state law claim looked at "the conduct of the employee and the conduct and motivation of the employer . . . [n]either of the elements requires a court to interpret any term of a collective-bargaining agreement").  Because proof of defendants' subjective motive does not involve an interpretation of the CBA, plaintiff's malicious prosecution claim is not preempted by § 301.[7]  *Id*.

### E.   Extreme and Outrageous Conduct

Defendants argue that plaintiff's claim for extreme and outrageous conduct is preempted by § 301 because a determination of whether defendants' action was outrageous requires construction of the CBA.  Docket No. 17 at 10.

Plaintiff's complaint states that "[d]efendants engaged in extreme and outrageous conduct" and that "[d]efendants did so recklessly and with the intent of causing the plaintiff severe emotional distress."  Docket No. 2 at 6, ¶ 23-24.  According to these allegations, plaintiff's claim for extreme and outrageous conduct appears to be based on defendants' investigation of her alleged theft.

Under Colorado law, the elements of outrageous conduct are that (1) defendant engaged in extreme and outrageous conduct; (2) recklessly or with intent of causing plaintiff severe emotional distress; and (3) caused the plaintiff severe and emotional distress.  *Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994).

---

[7]Because the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims, the Court will not address defendants' state law arguments regarding this claim.

16

"Outrageous conduct" is defined as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo. 1988). Although the question of whether conduct is outrageous is one for the jury, the trial court is initially responsible for determining whether reasonable persons could differ on the question. *Culpepper*, 877 P.2d at 883.

The Court finds that a determination of whether defendants' conduct was "outrageous" during its investigation of plaintiff's alleged theft necessarily requires a construction of what defendants' rights and obligations were under the CBA as "that is the reference point against which [defendants'] action must be scrutinized." *See Steinbach v. Dillon Co.,* Inc., 253 F.3d 538, 542 (10th Cir. 2001) (citing *Garley*, 236 F.3d at 1214). Unlike plaintiff's claim for malicious prosecution, which considered defendants' motive, plaintiff's claim for extreme and outrageous conducts raises the issue of defendants' rights and responsibilities under the CBA, i.e., did defendants have a right under the CBA to investigate plaintiff and was it "outrageous" for defendants to investigate plaintiff's alleged theft in the manner they did. Accordingly, whether defendants were justified in the manner in which they conducted the investigation of plaintiff's alleged theft is "inextricably intertwined" with defendants' authority under the CBA and therefore is preempted by § 301 of the LMRA. *Allis-Chalmers*, 471 U.S. at 213; *see Mowry v. United Parcel Serv.*, 415 F.3d 1149, 1157 (10th Cir. 2005) (finding that intentional infliction of emotional distress claim arising out of termination is preempted by § 301 because determining whether employer's conduct was

"outrageous" required construction of employer's right and obligations under the CBA). Moreover, this claim could not proceed as a breach of contract claim pursuant to § 301 because, as noted above, she failed to completely exhaust the grievance procedures. *See Garvin*, 174 F.3d at 1093. Thus, the Court will dismiss plaintiff's claim for extreme and outrageous conduct for failure to exhaust.

### F. Jurisdiction Over State Law Claims

Plaintiff originally filed this case in the District Court for the City and County of Denver, Colorado. Docket No. 2. Defendants removed the case based on preemption. *See Avco Corp. v. Aero Lodge No. 735, Int'l Assoc. Of Machinists & Aerospace Workers*, 390 U.S. 557, 560 (1968). The Court has now resolved defendants' arguments regarding preemption, leaving two state law claims in this case. Thus, none of plaintiff's remaining claims arise under federal law. Moreover, defendants do not argue that this Court can exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

Since all federal issues have been resolved in this action, the Court will decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims.[8] *See* 28

---

[8]Under 28 U.S.C. § 1367(c)(3), the Court has discretion to exercise jurisdiction over pendent state law claims. As a general proposition, "[p]endent jurisdiction is exercised on a discretionary basis, keeping in mind considerations of judicial economy, convenience and fairness to the litigants." *Bauchman v. West High School*, 132 F.3d 542, 549 (10th Cir. 1997). In the specific context of § 1367(c)(3), however, the Tenth Circuit has concluded that, "[i]f federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'" *Id.* (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)). The reason courts should dismiss such claims is that "'[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'" *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)). A court's exercise of discretion, it would seem, is limited to determining whether compelling reasons justify retaining jurisdiction. *See Brooks*, 614 F.3d at 1229 (reaffirming that

U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009) (noting that a district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary). The Court will therefore remand this case. *See Thompson v. City of Shawnee*, 464 F. App'x 720, 726 (10th Cir. 2012) (district court has discretion either to remand or dismiss pendent claims over which it declines to exercise jurisdiction).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Motion for Summary Judgment and Incorporated Brief [Docket No. 17] is **GRANTED** in part and **DENIED** in part as indicated in this Order. It is further

**ORDERED** that plaintiff Marsha Atencio's first and fourth claims for relief against defendants are dismissed without prejudice as preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq*. It is further

**ORDERED** that this case is **REMANDED** to the District Court for the City and County of Denver, Colorado, where it was originally filed as Civil Action No. 2011 CV 4619. It is further

---

courts have discretion to determine whether to exercise supplemental jurisdiction pursuant to § 1367(c)(3), but reversing the district court's grant of summary judgment on state law claims); *Endris v. Sheridan County Police Dep't*, 415 F. App'x 34, 36 (10th Cir. 2011) ("any state-law claims for assault and battery or mental and emotional injury were inappropriate subjects for the exercise of pendent jurisdiction where all federal claims had been dismissed.").

**ORDERED** that the Trial Preparation Conference scheduled for December 7, 2012 and the trial set for December 17, 2012 are **VACATED**.

DATED December 5, 2012.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge